Kirk Pasich (SBN 94242)
KPasich@McGuireWoods.com
Sandra Smith Thayer (SBN 200294)
SThayer@McGuireWoods.com
Caitlin Oswald (SBN 330974)
COswald@McGuireWoods.com
Eliza J. Logan (SBN 353753)
ELogan@McGuireWoods.com
MCGUIREWOODS LLP
1800 Century Park East, 8th Floor
Los Angeles, California 90067
Telephone: (310) 315-8200
Facsimile: (310) 315-8210

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEMPRA,<br><br>             Plaintiff,<br><br>       vs.<br><br>ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LIMITED,<br><br>             Defendant. | Case No. 2:23-cv-10544-JLS-SSC<br><br>Hon. Josephine L. Staton<br><br>**DECLARATION OF GARY GREENFIELD IN SUPPORT OF PLAINTIFF SEMPRA'S OPPOSITION TO DEFENDANT ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LIMITED'S MOTION FOR SUMMARY JUDGMENT**<br><br>*[Filed concurrently with Plaintiff's Opposition to Motion for Summary Judgment; Statement of Genuine Disputes of Material Fact; Evidentiary Objections; Request for Judicial Notice; Declarations of S. Muck, W. Rissier, and S. Thayer; [Proposed] Order; and Motion to Seal]*<br><br>Date:  June 13, 2025<br>Time:  10:30 a.m.<br>Ctrm:  8A<br><br>Complaint Filed:  December 15, 2023 |

**DECLARATION OF G. GREENFIELD ISO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

# DECLARATION OF GARY GREENFIELD

I, Gary Greenfield, declare as follows:

1. I am the owner and founder of Litigation Cost Management. I have personal knowledge of the facts stated herein unless they are stated on information or belief. If called and sworn as a witness, I could and would testify competently as to these facts.

2. As part of our business, we regularly conduct analyses of both legal and expert witness fees in litigation regarding the reasonableness, appropriateness and allocation of time, fees and expenses being sought, as well as hourly rates.

3. Prior to starting Litigation Cost Management, I was a partner in the law firm of Shartsis, Friese & Ginsburg in San Francisco, California, where I was a litigator for 15 years. During my time at the firm, I handled general commercial litigation of varying types, including breach of contract, constitutional law, securities, fraud, bankruptcy litigation, intellectual property, unfair competition and civil rights litigation. I represented both plaintiffs and defendants. I handled both contingency cases and cases where we were compensated on an hourly basis. A true and correct copy of my resume is attached hereto as Exhibit 1 and incorporated herein by reference.

4. I have been retained by McGuireWoods LLP on behalf of Plaintiff ("Sempra") to provide my opinion regarding the reasonableness of the fees and expenses incurred in the investigation and defense of six shareholder derivative

lawsuits (the "Derivative Lawsuits")[1] and a federal securities class action (the "Securities Action")[2] (collectively, the "Actions").

5. My compensation as a fees expert is not dependent upon the outcome of this matter.

6. I previously detailed my opinions in my expert report dated April 25, 2025. A true and correct copy of my April 25, 2025, expert report is attached hereto as Exhibit 2.

7. Based on my review of the file, interviews with Sempra's inhouse counsel and outside counsel for the defendants in the Actions, the Sempra Special Matters Committee ("SMC") and the Demand Review Committee ("DRC") (collectively, "defense counsel"), my experience as a litigator, and my experience as an expert, it is my opinion that the fees and expenses incurred on behalf of Sempra and SoCalGas and their directors, officers, and employees (the "Underlying Defendants") and paid by Sempra were reasonable.

8. In particular, the hourly rates charged by defense counsel were reasonable. All the law firms involved in the investigation and defense of the Underlying Actions are firms with substantial experience and expertise in representing defendants in shareholder derivative and securities litigation. Each of the firms are ranked by Chambers and Partners as among the top securities firms in the country. In addition, the lead partners at each of the firms—Jack Dicanio at

---

[1] *Favors v. Reed et al.*, Los Angeles Superior Court, No. BC664302 ("*Favors*"); *Fazio v. Reed et al.*, San Diego Superior Court, No. 37-2017-00007459-CU-SL-CTL ("*Fazio*"); *Firemen's Ret. Systems v. Reed et al.*, San Diego Superior Court, No. 37-2016-00005842-CU-BT-CTL ("*Firemen's*"); *Fischman v. Reed et al.*, United States District Court for the Southern District of California, No. 16-CV-1006-WQH-NLS ("*Fischman*"); *Kanter v. Reed et al.*, Los Angeles Superior Court, No. BC611319 ("*Kanter*"); and *Shupak v. Reed et al.*, Los Angeles Superior Court, No. BC617444 ("*Shupak*").

[2] *Plumley v. Sempra et al.*, United States District Court for the Southern District of California, No. 3:16-cv-00512-BEN-RBB.

Skadden, Susan Muck at WilmerHale, Robert Gooding at Morgan Lewis, Matthew Close at O'Melveny, and John Dwyer at Cooley—have been recognized as outstanding securities lawyers in a number of legal publications. The experience and expertise of defense counsel was relevant both to the nature of the services provided and rates charged.

9. The hourly rates charged by the defense counsel in the Actions were based on the law firms' actual rates billed and paid by their regular fee-paying clients in the market. Moreover, defense counsels' rates were substantially discounted.

10. Sempra is a sophisticated entity with a large amount of litigation of various types and substantial experience in managing litigation, including in choosing and retaining counsel. It is aware of the variety of rates based on experience and expertise that exist in the Los Angeles and California market more broadly. It could have chosen and recommended firms that charged lower rates had it believed that was appropriate, and it was paying the defense counsel on an ongoing basis during the Underlying Actions without any certainty of reimbursement so it had every incentive to retain and pay firms at rates that it determined were appropriate given what was at stake and the nature of the work required in the Underlying Actions.

11. Based on the foregoing, the Underlying Defendants' decision to retain the firms and Sempra's willingness to pay the rates paid was a reasonable decision, which itself establishes that the rates were reasonable.

12. Notably, AEGIS approved the initial Morgan Lewis rates. This approval demonstrates that AEGIS considered those rates reasonable.

13. However, AEGIS refused to increase the rates it was paying (including those of Morgan Lewis) during the course of the Underlying Actions which went on for seven years. Absent an agreement to the contrary, it is common practice for commercial law firms such as defense counsel here to increase their rates on an

annual basis. There was no agreement between AEGIS and Sempra that the attorneys' rates would remain the same throughout the representation, nor that the rates would be the same for all law firms involved in the Underlying Actions.

14. I have reviewed attorney rates in many cases in the relevant market. The rates charged by the law firms in the Underlying Actions are well within the market for comparable lawyers providing comparable services.

15. Additionally, the extensive experience and expertise that opposing counsel in the Underlying Actions had in derivative and securities litigation demonstrates the reasonableness of the fees and expenses incurred by the Underlying Defendants in the Underlying Actions. For instance, Jeff Westerman, who was appointed lead counsel in the *Kanter* Consolidated Action, is very experienced in derivative and securities litigation and has been recognized by the Los Angeles *Daily Journal* as one of the top 30 securities litigators in California.[3]

16. Opposing counsel relies exclusively on the Wolters Kluwer *2018 Real Rate Report*. As I discussed in my report, many variables go into determining whether rates are reasonable. While a useful tool, the *Real Rate Report* has its limitations for analysis, specifically when it comes to cases of this type. Further, the rates referenced by opposing counsel in the *Real Rate Report* are based upon the "average rate for partners in Los Angeles, California practicing 'commercial,' 'corporate governance,' 'corporate: other,' or 'corporate: regulatory and compliance' in law firms of more than 1,000 lawyers during the time period between 2016 and 2018[.]" Defendant's Memorandum of Points and Authorities, p. 27. These categories do not appear to include shareholder derivative or securities fraud class actions. Nor does opposing counsel indicate that the rates noted in the *Real Rate Report* are for lawyers who are comparable in reputation, expertise and experience in defending shareholder derivative or securities fraud class actions to

---

[3] https://www.zimmreed.com/attorneys/jeff-s-westerman/

the lawyers in the Underlying Actions. In addition, one would not choose a law firm for the type of litigation involved in the Underlying Actions based on their charging the *average* rates in the market.

17. Sempra's in-house legal team, which included experienced litigators and litigation managers, was active in overseeing and approving the work of defense counsel in the Underlying Actions. Based on my discussions with Sempra's inhouse counsel and with counsel for the Underlying Defendants, I determined that Sempra, the DRC and the SMC carefully managed the work in the Underlying Actions.

18. The individual law firms were also careful in management of the actions from a cost standpoint. Bills were carefully reviewed, time was written off, and cases were staffed leanly and responsibly.

19. The deductions that AEGIS made and has stated were for "administrative, clerical, and overhead expenses" are typical expenses billed by comparable law firms in Los Angeles.

20. To thoroughly defend the Underlying Actions, defense counsel had to expend a substantial amount of work in reviewing documents and other Electronically Stored Information ("ESI") from the public record and discovery documents from the JCCP.[4] The Complaints in the Underlying Actions were long, extremely detailed and heavily reliant on materials in the public record, including filings with the SEC, prior testimony and filings with the CPUC, testimony in various proceedings, historic well files, and related files from the Aliso Canyon storage facility, press releases, and Sempra and SoCalGas corporate documents. Defense counsel had to review and analyze these materials and conduct their own

---

[4] Four of the Derivative Lawsuits—*Firemen's*, *Kanter*, *Shupak*, and *Favors*—were consolidated into one consolidated shareholder derivative action, referred to as the "*Consolidated Kanter* Lawsuit." The *Consolidated Kanter* Lawsuit and the *Fazio* Lawsuit were included in *Coordination Proceeding Special Title (Rule 3.550)*, *Southern California Gas Leak Cases*, Judicial Counsel Coordination Proceeding No. 4861 (the "*Leak Cases*").

research in the public record to provide a defense to the Underlying Defendants. Defense counsel relied on these materials to draft demurrers and motions to dismiss and other filings in the Underlying Actions, prepare for the possibility that one or more of the Underlying Actions would go beyond the pleading stage and enter discovery, prepare Sempra's and/or SoCalGas' directors and officers for depositions to be taken in the JCCP Action on issues that also related to the Underlying Actions, and prepare them for interviews by the DRC during its investigation into the allegations contained in the Derivative Lawsuits and the shareholder derivative demand letters. This intensive review of documents was also undertaken by counsel for the DRC in its investigation into the derivative lawsuits and was instrumental in the eventual dismissal of the *Fazio* lawsuit and the defense of the *Kanter* Consolidated Action.[5]

21. To adequately investigate and defend the Underlying Actions, Sempra and SoCalGas had to collect millions of pages of documents related to, among other things, the 2015 gas leak at the Aliso Canyon facility, the Aliso Canyon facility, the allegations contained in various lawsuits in the JCCP Action (which included the majority of the Underlying Actions). More than 1.7 million documents (consisting of 5 million pages) plus hundreds of Gigabytes of native files and data were ultimately produced by Sempra and SoCalGas in the JCCP Action.

22. Given the allegations in the Derivative Lawsuits (and in some of the lawsuits in the JCCP Action) that the director defendants breached their fiduciary duties by, among other things, failing to provide adequate oversight over Aliso Canyon, the leak, and the post-leak relocation efforts, it was reasonable for

---

[5] The Sempra Board of Directors formed the DRC in order to investigate the allegations in the *Fazio* demand letter and any other demand letters, the *Fazio* action, and the other shareholder derivative actions, which is a common practice when board of directors receive demands preliminary to the filing of shareholder derivative actions or are sued in shareholder derivative actions.

Sempra's board to create the SMC to provide oversight and advice to the Board about the leak, the response to the leak, and the resulting litigation (including the Actions).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this Declaration is executed on May 23, 2025, at Oakland, California.

_____
GARY GREENFIELD